UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
: 
ALBERT BLANCHARD, :
: Case No.
                        Plaintiff, :
: **COMPLAINT**
      -against- :
:
TABULATE, INC. :
:
                        Defendant. :
:
---------------------------------------------------------------x

       Plaintiff Albert Blanchard ("Plaintiff" or "Blanchard") alleges for his complaint against Defendant Tabulate, Inc. ("Defendant" or "Company"), to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, as follows:

## NATURE OF THE ACTION

       1.     Plaintiff brings this action as the former Chief Executive Officer of the Company for breach of contract and entry of an order declaring Plaintiff is entitled to indemnification and advancement of legal fees under an indemnification agreement dated May 7, 2014, annexed hereto as "Exhibit A" (the "Indemnification Agreement"), among other things.

## JURISDICTION AND VENUE

       2.     This Court has jurisdiction under 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between a citizen of a state and a citizen of a foreign state. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 2201, and has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Venue is proper under 28 U.S.C. §1391 because the Company is subject to personal jurisdiction in this District and a substantial part of the events or omissions that give rise to the claims occurred in this District.

4. The Company consented to this Court's jurisdiction and venue. The Indemnification Agreement contains a clause (Ex. A at § 12.11) authorizing Plaintiff to bring an action in "any jurisdiction" to interpret and enforce Plaintiff's rights to indemnification and advancement. This action arises out of, is based on, and relates to the Indemnification Agreement.

5. This action also concerns an employment agreement dated August 15, 2014 (the "Employment Agreement") annexed hereto as "Exhibit B" that appointed Plaintiff as the Company's CEO until Plaintiff's involuntary termination with the Company in April 2018.

6. The Court also has jurisdiction over Defendant because it purposefully directed its activities in New York.

7. Plaintiff spent approximately 90% of his time working as the Company's CEO from his Manhattan home office.

8. Plaintiff's work as CEO included: (i) managing all product development activities for the Company that accounted for nearly all of the Company's time and resources; (ii) developing the idea, prototype and financing for the Company's initial technology platform; (iii) developing the Company's corporate and ownership structure, including company formation; (iv) creating all necessary fundraising documents for the Company, resulting in millions of dollars raised for investment and operations; (v) taking and receiving investor calls, emails and meetings; (vi) vendor and contractor sourcing; and (vii) directing the deal strategy, sourcing activities, valuation, negotiation and closing for all corporate acquisitions.

## PARTIES

9. Plaintiff is the co-founder, former CEO, former chairman of the Company's board of directors and a current shareholder of the Company. Plaintiff served as the Company's CEO from August 2014 until his Involuntary Termination (discussed below) on April 6, 2018. Plaintiff resides in Manhattan.

10. Defendant is a Delaware corporation with its principal place of business in Texas. Defendant is a financial technology company focused on bookkeeping and payroll solutions for restaurants.

## STATEMENT OF FACTS

**A. Plaintiff and Company Enter into an Employment Agreement**

11. The Company was formed in 2014 by Plaintiff and co-founder Jim Moskosky ("Moskosky"), the Company's current CEO.

12. The Company was created based on an idea conceived of by Plaintiff.

13. Plaintiff has been the driving force behind all of the Company's business operations since inception.

14. In 2014, Plaintiff entered into the Employment Agreement with the Company that appointed him CEO responsible for the "general supervision, direction, and control of the business of the Company…." Ex. B at § 1 (Employment Agreement). Moskosky and Plaintiff drafted and executed the Employment Agreement together.

15. The Employment Agreement provided Plaintiff with an annual base salary of $240,000 that was temporarily reduced for the first six months of Plaintiff's employment to $180,000 per year. *Id*. at § 2.

16.     The Company agreed to review Plaintiff's salary periodically and increase it by at least 10% on an annual basis. *Id.*

17.     In addition to receiving a salary, Plaintiff was also entitled to health insurance and other benefits, such as retirement savings plans, tax, financial and estate planning services, that were offered to the Company's executive officers. *Id.* at § 4.

18.     Plaintiff's employment with the Company was at-will and could have been terminated by Plaintiff upon written notice for "Good Reason," which was defined as a "Involuntary Termination." *Id.* at § 6(a). "Good Reason" is defined as "any material breach" of the Employment Agreement, among other things. *Id.* at § 7(a)(iii).

19.     Plaintiff also had the option to terminate his employment without "Good Reason," which the Employment Agreement defined as a "Voluntary Termination." *Id.* at § 6(b).

20.     Under either scenario, Involuntary or Voluntary Termination, Plaintiff was entitled to receive payment for his unpaid salary that had accrued to the date of his termination of employment, any remaining unpaid balance of all bonuses granted to Plaintiff and benefits under the Company's then existing benefit plans and policies that would continue for as long as provided under the terms of such plans and policies. *Id.* at § 8.

21.     In addition to the items stated above, Plaintiff was entitled to a severance package if his termination was Involuntary, which included (i) 12 months of his then current salary; (ii) 100% of the target bonus that would otherwise had been payable to Plaintiff for the fiscal year of his Involuntary Termination; and (iii) 12 months of Plaintiff's then current premiums and administration fees in connection with the Company's related health insurance plans. *Id.* at §8(b).

## B. Plaintiff and the Company Enter Into an Indemnification Agreement

22. As an inducement for Plaintiff to serve as the Company's CEO, Plaintiff and the Company entered into the Indemnification Agreement, pursuant to which the Company agreed to indemnify Plaintiff to the fullest extent permitted under Delaware law, which is the law that governs the Indemnification Agreement. Section 10 of the Indemnification Agreement provides:

> **Scope of Indemnity**. The scope of indemnification under this Agreement is intended to be to the maximum extent permitted by applicable law, and if the law regarding the standards under Delaware law for entitlement to indemnification shall permit broader contractual indemnification, this Agreement shall be deemed amended to incorporate such broader indemnification.

Ex. A at § 10.

23. The Indemnification Agreement includes a mandatory indemnification clause that covers Plaintiff against liability relating to "any proceeding," including actual and potential claims brought by the Company, against Plaintiff in his former capacity as CEO or claims Plaintiff brings against the Company concerning his role as CEO.

24. "Proceeding" under the Indemnification Agreement means "any threatened, pending or completed action, claim, suit or other proceeding, whether civil, criminal, administrative, investigative or any other type whatsoever, including, without limitation, all investigation, participation (**in any capacity**), defense, settlements and appeals of such proceeding." *Id.* at § 1.3 (emphasis added).

25. Section 2 of the Indemnification Agreement provides, in relevant part:

> **Mandatory Indemnification**. The Company shall indemnify and hold the Indemnitee harmless to the fullest extent permitted by the laws of the State of Delaware…against any and all expenses and liabilities, damages, losses, judgments, fines, taxes, penalties and amounts paid in settlement…of any type whatsoever…relating to, resulting from or arising out of **any proceeding**.

*Id*. at § 2 (emphasis added).

26. The Indemnification Agreement requires the Company to advance "expenses" in connection with "any proceeding" in which Plaintiff is participating as a party in "any capacity", *i.e.*, as a plaintiff or defendant.

27. "Expenses" under the Indemnification Agreement mean "all direct and indirect costs of any type or nature whatsoever (including, without limitation, all attorneys' fees and related disbursements and other out-of-pocket cost) incurred, payable or determined by [Plaintiff] as likely to be incurred by [Plaintiff] in connection with the investigation, participation (**in any capacity**), defense or appeal of a proceeding or establishing or enforcing a right to indemnification or advancement…." *Id.* at § 1.2 (emphasis added).

28. Section 4 of the Indemnification Agreement provides, in relevant part:

> **Mandatory Advancement of Expenses.** The Company shall advance all **expenses** incurred, payable or determined by Indemnitee as likely to be incurred by the Indemnitee in connection with…participation (**in any capacity**)…of **any proceeding** to which the Indemnitee is a party…by reason of the fact that the Indemnitee is or at any time was an agent of the Company…The Indemnitee hereby undertakes to promptly repay such amounts advanced only if, and to the extent that, it shall ultimately and finally adjudged (by judgment not subject to appeal) by a court of competent jurisdiction that the Indemnitee is not entitled to be indemnified by the Company…The advances to be made hereunder shall be paid by the Company to the Indemnitee within seven (7) days following delivery of a written request therefore by the Indemnitee to the Company.

*Id*. at § 4 (emphasis added).

29. The language in § 4 mirrors the language in the General Corporation Law of the State of Delaware § 145(e), which provides for the advancement of attorneys' fees and other legal expenses to officers and directors in connection with civil, criminal, administrative or investigative proceedings.

30. The Indemnification Agreement authorizes Plaintiff to hire his own lawyers to "advise and represent" him in any action "against the Company" if it "should appear" to Plaintiff

6

that the Company is failing to comply with its obligations under the Indemnification Agreement or is threatening to take action against Plaintiff.

31. Plaintiff may also commence an action to interpret his rights under the Indemnification Agreement "in any jurisdiction," and the Company is required to pay "all attorneys' and related fees and expenses" incurred by Plaintiff "[w]ithout respect to whether [Plaintiff] prevails" in his interpretation of the Indemnification Agreement. Section 12.11 of the Indemnification Agreement provides, in relevant part:

> **Legal Fees and Expenses**. …without limiting the generality or effect of any other provision hereof, if it should appear to the Indemnitee that the Company has failed to comply with any of its obligations under this Agreement or in the event that the Company or any other person takes or threatens to take any action to declare this Agreement void or unenforceable or institutes any litigation or other action designed to deny, or to recover from, the Indemnitee the benefits provided or intended to be provided to the Indemnitee hereunder, the Company irrevocably authorizes the Indemnitee from time to time to retain counsel of Indemnitee's choice, at the expense of the Company as hereafter provided, to advise and represent the Indemnitee in connection with any such interpretation, enforcement or defense, including without limitation the initiation or defense of any litigation or other legal action, whether by or against the Company or any director, officer, stockholder or other person affiliated with the Company, in any jurisdiction… Without respect to whether the Indemnitee prevails, in whole or in part, in connection with any of the foregoing, the Company will pay and be solely financially responsible for any and all attorneys' and related fees and expenses incurred by the Indemnitee in connection with any of the foregoing.

*Id.* at § 12.11.

### C. Plaintiff Involuntarily Terminates His Position as the Company's CEO and the Company Responds by Falsely Accusing Plaintiff of Engaging in Illegal and Fraudulent Conduct

32. On April 6, 2018, Plaintiff provided the Company with written notice of his Involuntary Termination based on material breaches of the Employment Agreement caused by the Company.

33. Plaintiff's written notice set forth the reasons for the Involuntary Termination, which included actions taken by the Company's board without Plaintiff's knowledge or consent and lack of consideration given to Plaintiff's views, as the Company's CEO, on matters ranging from capital raising to corporate branding and messaging. Plaintiff also explained the Company's obligation to pay the portion of his salary that Plaintiff and Moskosky had voluntarily deferred on a strictly temporary basis to strengthen the Company's financial position. Plaintiff demanded $504,120 in unpaid salary and $319,440 in severance, totaling $823,560, plus 12 months of health insurance coverage. The written notice made clear that Plaintiff did not intend to assert an immediate claim against the Company for amounts owed to him in unpaid salary and severance and was more interested in working with the Company to accelerate the business as the Company's largest shareholder and creditor.

34. The voluntary deferral of Plaintiff's salary was further evidenced by a September 30, 2014 agreement entered between Moskosky and Plaintiff to "delay payment of a portion of their respective monthly base salaries" until the Company received "Qualifying Financing." The Company received "Qualifying Financing" in July 2015.

35. Since the completion of the Qualified Financing, Moskosky had initiated several conversations with Plaintiff concerning the expected timing of payment of Moskosky's and Plaintiff's voluntary deferral of compensation. Beginning in September 2018, in response to actions taken by Moskosky, Plaintiff began recording various conversations with Moskosky. On March 23, 2018, Moskosky and Plaintiff had a conversation during which both parties acknowledged the need to record the Company's compensation obligations in the Company's financials. On March 26, 2018, Plaintiff emailed Moskosky to confirm that the compensation liabilities had been recorded, as previously discussed. Moskosky responded by attempting to

evade acknowledgment of the nature of the discussion. In response, Plaintiff had a follow-up conversation with Moskosky, during which Moskosky acknowledged the Company's obligations to Plaintiff, as well as Moskosky's "hope" to eventually receive his own deferred compensation.

36. On April 9, 2018, the Company rejected Plaintiff's Involuntary Termination and his request for unpaid salary and severance and attempted to unilaterally convert Plaintiff's termination from "Involuntary" to "Voluntary," a right the Company does not have under the Employment Agreement. The Company also falsely accused Plaintiff of making retroactive changes to the Company's financial statements without the Company's knowledge, which the Company claimed was "illegal, a breach of [Plaintiff's] duties as CEO, a breach of [Plaintiff's] fiduciary duties to the Company and its stockholders and a fraudulent misstatement of the financial condition of the Company, possibly imperiling the Company's ability to raise outside capital to survive."

**D. Plaintiff Seeks the Right to Indemnification and Advancement, Which the Company Wrongfully Refuses**

37. On May 18, 2018, Plaintiff, through his counsel, sent a letter to the Company demanding Plaintiff's deferred compensation and requesting an advance of expenses covered under the Indemnification Agreement based on the Company's allegations that Plaintiff participated in illegal conduct, breached his fiduciary duties as an officer and director of the Company and made fraudulent statements concerning the Company's financial affairs.

38. On May 25, 2018, the Company, through its counsel, rejected Plaintiff's request for an advance based on its subjective view that Plaintiff would not prevail on any claim he brought against the Company for his unpaid salary and severance. The Company then made the preposterous claim that it was entitled to advancement from Plaintiff to pay the Company's attorneys to rebut Plaintiff's demand for his deferred compensation.

39. The Company also accused Plaintiff of "falsifying personal tax returns", "underreporting payroll taxes" and berated Plaintiff by telling him his indemnification and advance request was "consistent with [Plaintiff's] undisciplined management style" and "nothing more than a shakedown by a disappointed and unsuccessful founder."

40. On June 6, 2018, after providing the Company with documentation that supported Plaintiff's request for his unpaid salary and severance, the Company again falsely accused Plaintiff of underreporting and underpaying taxes in connection with the unpaid salary the Company denied existed and advised Plaintiff that the Company's shareholders had claims against him for allegedly providing false and misleading financial statements concerning Plaintiff's compensation. The Company also accused Plaintiff of "self-dealing" and breaching his fiduciary duty to the Company. The Company again rejected Plaintiff's request for indemnification and advancement.

41. The Company communicated the false allegations described herein to the other members of the board of directors, other shareholders, and personnel of the Company.

42. On August 21, 2018, Plaintiff resigned from the Company's chairman of the board of directors. In response, on August 29, 2018, the Company stated it was ready to litigate Plaintiff's claim for unpaid salary and severance and would file "appropriate counterclaims" against Plaintiff if the matter could not be resolved out of court.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract (Employment Agreement)**

43. Plaintiff repeats and alleges the allegations in paragraphs 1 through 42.

44. The Employment Agreement constitutes a valid and binding contract.

45. The Company breached the Employment Agreement by failing to pay Plaintiff his unpaid salary and severance totaling $823,560.

46. On April 6, 2018, Plaintiff provided the Company with written notice of his Involuntary Termination and requested payment of his unpaid salary and severance, which Plaintiff was entitled to receive under § 8 of the Employment Agreement.

47. On April 9, 2018, the Company rejected Plaintiff's Involuntary Termination and request for unpaid salary and severance.

48. By refusing to pay Plaintiff's unpaid salary, severance, health insurance and other benefits, the Company breached the Employment Agreement.

49. As a result, Plaintiff is entitled to damages totaling no less than $823,560, plus health insurance, other employee benefits, fees, expenses and prejudgment interest.

**SECOND CLAIM FOR RELIEF**
**Breach of Contract (Indemnification Agreement)**

50. Plaintiff repeats and alleges the allegations in paragraphs 1 through 49.

51. The Indemnification Agreement constitutes a valid and binding contract.

52. The Company breached the Indemnification Agreement by failing to indemnify and advance expenses to Plaintiff.

53. Plaintiff was a director and officer of the Company when he entered into the Indemnification Agreement with the Company.

54. The purpose of the Indemnification Agreement was to retain and protect Plaintiff from exposure to litigation costs and risks resulting from his service as the Company's CEO.

55. The Company agreed to indemnify Plaintiff "to the fullest extent permitted by the laws of the State of Delaware" and assumed the "maximum liability for expenses and damages in connection with claims against [Plaintiff] in connection with [his] service to the Company," including any threatened action taken by the Company, or third parties, against Plaintiff.

56. Under the terms of the Indemnification Agreement, Plaintiff has a right to indemnification and advancement from the Company if, by reason of his service as CEO of the Company, he is threatened to be made a party to any Proceeding brought by, or in the right of, the Company or a third party.

57. Pursuant to § 2 of the Indemnification Agreement, the Company is obligated to indemnify Plaintiff against liability relating to any Proceeding to which Plaintiff participated "in any capacity," either as a plaintiff or defendant.

58. Pursuant to §§ 4 and 12.11 of the Indemnification Agreement, Plaintiff is entitled to advancement for all attorneys' fees and other expenses he has incurred "in any capacity," and will incur in the future, relating to actual or potential claims asserted by the Company or a third party against Plaintiff or claims Plaintiff asserts against the Company.

59. By letter dated May 18, 2018, Plaintiff, through his counsel, provided notice to the Company of his claim for indemnification and advancement under the Indemnification Agreement.

60. By letter dated May 25, 2018, the Company denied Plaintiff's claim for indemnification and advancement, claiming Plaintiff "had no reason to fear imminent litigation," notwithstanding the Company's false accusations against Plaintiff that he participated in illegal conduct as CEO of the Company, breached his fiduciary duties to the Company and made false statement concerning the financial affairs of the Company. The Company also stated, without citation to any document or authority, that Plaintiff should advance expenses to the Company to rebut Plaintiff's request for his unpaid salary and severance.

61. By failing to pay Plaintiff with timely advances for his litigation expenses, the Company has breached the Indemnification Agreement.

62. Plaintiff is entitled to an order from the Court enforcing his indemnification and advancement rights under the Indemnification Agreement by (i) compelling the Company to advance Plaintiff's unreimbursed fees and expenses he has already incurred totaling $28,964.56 plus prejudgment interest (all of which fees and expenses are reasonable); (ii) compelling the Company to pay interest on that amount, as permitted under Delaware law; and (iii) requiring the Company to advance Plaintiff's reasonable fees and expenses going forward in connection with the Company's claims against Plaintiff and the claims Plaintiff has against the Company in an amount no less than $75,000.

### THIRD CLAIM FOR RELIEF
**Declaratory Judgment**

63. Plaintiff repeats and alleges the allegations in paragraphs 1 through 62.

64. Under the terms of the Indemnification Agreement, Plaintiff has a right to indemnification and advancement from the Company if, by reason of his service as CEO of the Company, he is threatened to be made a party to any Proceeding brought by, or in the right of, the Company or a third party. Correspondingly, Plaintiff has a right to indemnification and advancement from the Company for the prosecution of any claims Plaintiff has against Company by reason of his service as CEO of the Company.

65. The Company accuses Plaintiff of participating in illegal conduct as CEO of the Company, breaching his fiduciary duties to the Company and making fraudulent statements about the Company's financial affairs and has communicated these false accusations to shareholders, directors, and employees of the Company, along with others. The Company has also stated that its shareholders have claims against Plaintiff for allegedly providing false and misleading financial statements concerning Plaintiff's unpaid salary and severance.

66. Plaintiff provided written notice of his right to indemnification and advancement of expenses under the Indemnification Agreement based on the threat of litigation by the Company and/or its shareholders. The Company has denied Plaintiff's claim to indemnification and advancement.

67. A case or controversy exists between Plaintiff and the Company concerning Plaintiff's right to indemnification and advancement under the Indemnification Agreement.

68. Plaintiff is entitled to a declaratory judgment that he is entitled to indemnification and advancement of expenses under the Indemnification Agreement.

## FOURTH CLAIM FOR RELIEF
### Attorneys' Fees and Expenses

69. Plaintiff repeats and alleges the allegations in paragraphs 1 through 68.

70. Delaware law provides for an award of "fees on fees" in connection with the enforcement of indemnification and advancement rights by current and former corporate officers.

71. Pursuant to § 12.11 of the Indemnification Agreement, Plaintiff is entitled to an award of his legal fees and expenses incurred in connection with enforcing his rights to advancement and indemnification and in prosecuting this action.

72. Plaintiff's right to legal fees and expenses is not contingent upon a determination that Plaintiff is entitled to indemnification or advancement under the Indemnification Agreement. Section 12.11 provides that the Company is "solely financially responsible for any and all attorneys' and related fees and expenses incurred by [Plaintiff]" in connection with any "interpretation, enforcement or defense" of the Indemnification Agreement "without respect to whether [Plaintiff] prevails" on his claim for indemnification and/or advancement.

73. Accordingly, Plaintiff is entitled to payment of his legal fees and expenses in connection with this action totaling no less than $104,000, plus prejudgment interest.

WHEREFORE, Plaintiff demands judgment:

A.	On the First Claim for Relief against Defendant for breach of contract of Employment Agreement for damages totaling no less than $823,560, plus fees, expenses and prejudgment interest.

B.	On the Second Claim for Relief against Defendant for breach of contract of the Indemnification Agreement and an order (i) compelling the Company to advance Plaintiff's unreimbursed fees and expenses he has already incurred totaling $28,964.56 plus prejudgment interest; (ii) compelling the Company to pay interest on that amount, as permitted under Delaware law; and (iii) requiring the Company to advance Plaintiff's reasonable fees and expenses going forward in connection with the Company's claims against Plaintiff and claims Plaintiff has against the Company in an amount of no less than $75,000.

C.	In the Third Claim for Relief against Defendant for a declaratory judgment that Plaintiff is entitled to indemnification and advancement of expenses under the Indemnification Agreement.

D.	On the Fourth Claim for Relief against Defendant for payment of Plaintiff's legal fees and expenses in connection with this action totaling no less than $104,000 plus prejudgment interest.

E.	For interest, costs and the disbursements of the action and such other relief as the Court deems just.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury of all issues raised that are triable by jury.

Dated: New York, New York
September 20, 2018

                                                  THOMPSON BUKHER LLP

                                                  By: /s/ Andrew R. Goldenberg
                                                  Andrew R. Goldenberg, Of Counsel (AG 8213)
                                                  Benjamin S. Thompson (BT2176)
                                                  75 Broad Street, Suite 2120
                                                  New York, New York 10004
                                                  Telephone: (212) 920-6050
                                                  Facsimile: (646) 924-3040

                                                  *Attorneys for Plaintiff*