# EXHIBIT A

# INDEMNIFICATION AGREEMENT

This INDEMNIFICATION AGREEMENT (the "Agreement") is dated as of May 7, 2014 and is made by and between Tabulate, Inc., a Delaware corporation (the "Company"), and Albert J. Blanchard, a director and officer of the Company (the "Indemnitee").

## RECITALS

A. The Company is aware that it is important to attract and retain competent and experienced persons to serve as directors and/or officers and, unless such persons will be protected by comprehensive liability insurance and/or indemnification, it will be less likely that the Company will be able to obtain to the services of qualified directors and officers due to increased exposure to litigation costs and risks resulting from their service, and further due to the fact that the exposure frequently bears no reasonable relationship to the compensation of such directors and officers;

B. Accordingly, the Company believes that, in order to attract and retain talented and experienced individuals to serve as officers and directors of the Company, and to encourage such individuals to take the business risks necessary for the success of the Company, it is necessary for the Company contractually to indemnify officers and directors and to assume for itself maximum liability for expenses and damages in connection with claims against such officers and directors in connection with their service to the Company;

C. The General Corporation Law of Delaware, under which the Company is organized (the "Law"), empowers the Company to indemnify by agreement its officers, directors, employees and agents, and persons who serve, at the request of the Company, as directors, officers, employees or agents of other corporations or enterprises, and expressly provides that the indemnification provided by the Law is not exclusive; and

D. The Company desires and has requested the Indemnitee to serve and continue to serve as a director and officer of the Company and, as an inducement to serve and in consideration for the continuation of such service, the Company has agreed to indemnify the Indemnitee against claims for damages arising out of, relating to, or in connection with such service to the Company in accordance with the terms and conditions set forth in this Agreement.

NOW, THEREFORE, the parties hereto, intending to be legally bound, hereby agree as follows:

1. **Definitions.**

    1.1 **Agent.** For the purposes of this Agreement, "agent" of the Company means any person who is or at any time was (i) a director, officer, employee or representative of the Company or a subsidiary of the Company; or (ii) serving at the request of, for the convenience of, or to represent the interests of the Company or a subsidiary in any capacity (including without limitation as a director, officer, employee, trustee, member or manager) with regard to another entity or enterprise. The term "enterprise" includes any employee benefit plan of the Company or its subsidiaries or affiliates.

    1.2 **Expenses.** For purposes of this Agreement, "expenses" includes all direct and indirect costs of any type or nature whatsoever (including, without limitation, all attorneys' fees and related disbursements and other out-of-pocket costs) incurred, payable or determined by Indemnitee as likely to be incurred by the Indemnitee in connection with the investigation, participation (in any capacity), defense or appeal of a proceeding or establishing or enforcing a right to indemnification or advancement of expenses under this Agreement, the Law, or otherwise.

    1.3 **Proceeding.** For the purposes of this Agreement, "proceeding" means any threatened, pending or completed action, claim, suit or other proceeding, whether civil, criminal, administrative, investigative or any other type whatsoever, including, without limitation, all investigation, participation (in any capacity), defense, settlements and appeals of such proceeding.

    1.4 **Subsidiary.** For purposes of this Agreement, "subsidiary" means any corporation of which more than fifty percent (50%) of the outstanding voting securities is owned directly or indirectly by the Company, by the Company and one or more of its subsidiaries or by one or more of the Company's subsidiaries.

2. **Mandatory Indemnification.** The Company shall indemnify and hold the Indemnitee harmless to the fullest extent permitted by the laws of the State of Delaware in effect on the date hereof or as such laws may from time to time hereafter be amended to increase the scope of such permitted indemnification, against any and all expenses and liabilities, damages, losses, judgments, fines, taxes, penalties and amounts paid in settlement (including without limitation all interest, assessments and other charges paid or payable in connection with or in respect of any of the foregoing) of any type whatsoever (collectively, "Losses") relating to, resulting from or arising out of any proceeding. Without limiting the generality of the foregoing, the Company shall indemnify and hold harmless the Indemnitee:

   2.1 **Third Party Actions.** If the Indemnitee is a person who was or is a party or is threatened to be made a party to any proceeding (other than an action by or in the right of the Company), or is a witness or participant or is threatened to be a witness or participant in any proceeding, by reason of the fact that he or she is or at any time was an agent of the Company, or by reason of anything done or not done by Indemnitee in any such capacity, against any and all expenses and all Losses relating to, resulting from or arising out of any proceeding; and

   2.2 **Derivative Actions.** If the Indemnitee is a person who was or is a party or is threatened to be made a party to any proceeding by or in the right of the Company to procure a judgment in its favor, or is a witness or participant or is threatened to be a witness or participant in any proceeding by or in the right of the Company to procure a judgment in its favor, by reason of the fact that he or she is or at any time was an agent of the Company, or by reason of anything done or not done by Indemnitee in any such capacity, against any and all expenses and all Losses relating to, resulting from or arising out of any proceeding; except that Indemnitee shall not be entitled to indemnification under this subsection in respect of any proceeding as to which Indemnitee shall have been finally adjudged, in a judgment not subject to appeal, to be liable to the Company by a court of competent jurisdiction due to willful misconduct of a culpable nature in the performance of his duty to the Company, unless and only to the extent that the Court of Chancery or the court in which such proceeding was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to indemnity for such amounts which the Court of Chancery or such other court shall deem proper.

3. **Partial Indemnification and Contribution.**

   3.1 **Partial Indemnification.** If the Indemnitee is entitled under any provision of this Agreement to indemnification by the Company for some or a portion of any expenses or any Losses relating to, resulting from or arising out of any proceeding, but is not entitled, however, to indemnification for all of the total amount thereof, then the Company shall nevertheless indemnify the Indemnitee for such total amount except as to the portion thereof to which the Indemnitee is not entitled to indemnification.

   3.2 **Contribution.** If the Indemnitee is not entitled to the indemnification provided in Section 2 for any reason, then in respect of any threatened, pending or completed proceeding in which the Company is jointly liable with the Indemnitee (or would be if joined in such proceeding), the Company shall contribute to the amount of expenses and Losses incurred or payable by the Indemnitee in such proportion as is appropriate to reflect (i) the relative benefits received by the Company on the one hand and the Indemnitee on the other hand from the transaction from which such proceeding arose and (ii) the relative fault of the Company on the one hand and of the Indemnitee on the other hand in connection with the events which resulted in such expenses and Losses, as well as any other relevant equitable considerations. The relative fault of the Company on the one hand and of the Indemnitee on the other hand shall be determined by reference to, among other things, the parties' relative intent, knowledge, access to information and opportunity to correct or prevent the circumstances resulting in such expenses and Losses. The Company agrees that it would not be just and equitable if contribution pursuant to this Section 3 were determined by pro rata allocation or any other method of allocation, which does not take account of the foregoing equitable considerations.

4. **Mandatory Advancement of Expenses.** The Company shall advance all expenses incurred, payable or determined by Indemnitee as likely to be incurred by the Indemnitee in connection with the investigation, defense, participation (in any capacity), settlement or appeal of any proceeding to which the Indemnitee is a party or is threatened to be made

a party by reason of the fact that the Indemnitee is or at any time was an agent of the Company or by reason of anything done or not done by him or her in any such capacity. The Indemnitee hereby undertakes to promptly repay such amounts advanced only if, and to the extent that, it shall ultimately and finally adjudged (by judgment not subject to appeal) by a court of competent jurisdiction that the Indemnitee is not entitled to be indemnified by the Company. The advances to be made hereunder shall be paid by the Company to the Indemnitee within seven (7) days following delivery of a written request therefore by the Indemnitee to the Company.

5. **Directors' and Officers' Insurance.** The Company may, to the extent that the Board determines it to be economically reasonable, maintain a policy of directors' and officers' liability insurance ("D&O Insurance"), on such terms and conditions as may be approved by the Board. To the extent the Company maintains an insurance policy or policies providing directors' and officers' liability insurance, the Company shall cause the Indemnitee to be covered by such policy or policies, in accordance with its or their terms, to the maximum extent of the coverage available for any director of the Company. The Company may, but will not be required to, create a trust fund, grant a security interest or use other means, including without limitation a letter of credit, to ensure the payment of such amounts as may be necessary to satisfy its obligations to indemnify and advance expenses pursuant to this Agreement. If, at the time of the receipt of a notice of the commencement of a proceeding pursuant to Section 6 hereof, the Company has D&O Insurance in effect, the Company shall give prompt notice of the commencement of such proceeding to the insurers in accordance with the procedures set forth in the respective policies. The Company shall thereafter take all necessary or desirable action to cause such insurers to pay, on behalf of the Indemnitee, all amounts payable as a result of such proceeding in accordance with the terms of such D&O Insurance policies. Notwithstanding the existence of any insurance or any obligations of any insurers relating thereto, the Company shall be and remain responsible for timely payment of all expenses, Losses and other obligations of the Company under this Agreement. The Company shall not be required, however, to pay the Indemnitee with regard to and to the extent of specific Losses for which an insurer has paid and the Indemnitee has actually received payment therefor.

6. **Notice of Indemnification.** Promptly after receipt by the Indemnitee of notice of the commencement of or the threat of commencement of any proceeding, the Indemnitee shall, if the Indemnitee believes that indemnification with respect thereto may be sought from the Company under this Agreement, notify the Company of the commencement or threat of commencement thereof. The failure by the Indemnitee to notify the Company of such Claim will not relieve the Company from any obligations or liability hereunder unless, and only to the extent that, the Company did not otherwise learn of the proceeding and such failure resulted in forfeiture by the Company of substantial defenses, rights or insurance coverage.

7. **Defense of Claims.** The Company will be entitled to participate in the defense of any proceeding or to assume the defense thereof, with counsel reasonably satisfactory to the Indemnitee, provided that in the event that (i) the use of counsel chosen by the Company to represent the Indemnitee would present such counsel with an actual or potential conflict, (ii) the named parties in any such proceeding (including any impleaded parties) include both the Company and the Indemnitee and the Indemnitee shall conclude that there may be one or more legal defenses available to him that are different from or in addition to those available to the Company, or (iii) any such representation by the Company would be precluded under the applicable standards of professional conduct then prevailing, then Indemnitee will be entitled to retain separate counsel (but not more than one law firm plus, if applicable, local counsel in respect of any particular proceeding) at the Company's expense. The Company will not, without the prior written consent of the Indemnitee, effect any settlement of any threatened or pending proceeding which the Indemnitee is or could have been a party unless such settlement solely involves the payment of money and includes an irrevocable and unconditional release of the Indemnitee from all liability on any claims that are the subject matter of such proceeding.

8. **Exceptions.** Any other provision herein to the contrary notwithstanding, the Company shall not be obligated pursuant to the terms of this Agreement: (i) to indemnify or advance expenses to the Indemnitee with respect to proceedings initiated or brought voluntarily by the Indemnitee and not by way of defense, except with respect to proceedings specifically authorized by the Board or brought to establish or enforce a right to indemnification and/or advancement of expenses arising under this Agreement, the charter documents of the Company or any subsidiary, or any statute or law or otherwise, but such indemnification or advancement of expenses may nonetheless be provided by the Company if the Board deems appropriate; or (ii) to indemnify the Indemnitee if a final decision by a court

having jurisdiction in the matter, in a judgment not subject to appeal, shall determine that such indemnification is not lawful.

9. **Non-Exclusivity.** The provisions for indemnification and advancement of expenses set forth in this Agreement shall not be deemed exclusive of any other rights which the Indemnitee may have under any provision of law, the Company's Certificate of Incorporation or Bylaws, the vote of the Company's stockholders or disinterested directors, other agreements or otherwise, both as to action in the Indemnitee's official capacity and to action in another capacity while occupying his or her position as an agent of the Company, and the Indemnitee's rights hereunder shall continue after the Indemnitee has ceased acting as an agent of the Company and shall inure to the benefit of the heirs, executors and administrators of the Indemnitee.

10. **Scope of Indemnity.** The scope of indemnification under this Agreement is intended to be to the maximum extent permitted by applicable law, and if the law regarding the standards under Delaware law for entitlement to indemnification shall permit broader contractual indemnification, this Agreement shall be deemed amended to incorporate such broader indemnification.

11. **No Presumption.** Upon subsequent review or appeal of any determination that agent is not entitled to indemnity, the termination of any proceeding by judgment, order, settlement (whether with or without court approval) or conviction, or upon a plea of nolo contendere, or its equivalent, shall not create a presumption that Indemnitee did not meet any particular standard of conduct or have any particular belief or that a court has determined that indemnification is not permitted by this Agreement or applicable law.

12. **General Provisions.**

    12.1    **Interpretation of Agreement.** It is understood that the parties hereto intend this Agreement to be interpreted and enforced so as to provide indemnification and advancement of expenses to the Indemnitee to the fullest extent now or hereafter permitted by law.

    12.2    **Continuing Rights.** The Company and the Indemnitee each acknowledge and agree that the Indemnitee's rights to be indemnified under this Agreement shall continue beyond and survive the Indemnitee's cessation for any reason as an agent of the Company and such cessation shall not in any way affect or impair the Indemnitee's right to be indemnified under the terms of this Agreement.

    12.3    **Severability.** If any provision or provisions of this Agreement shall be held to be invalid, illegal or unenforceable for any reason whatsoever, then: (a) the validity, legality and enforceability of the remaining provisions of this Agreement (including, without limitation, all portions of any paragraphs of this Agreement containing any such provision held to be invalid, illegal or unenforceable that are not themselves invalid, illegal or unenforceable) shall not in any way be affected or impaired thereby; and (b) to the fullest extent possible, the provisions of this Agreement (including, without limitation, all portions of any paragraphs of this Agreement containing any such provision held to be invalid, illegal or unenforceable, that are not themselves invalid, illegal or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable and to give effect to Section 12.1 hereof.

    12.4    **Modification and Waiver.** No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by both of the parties hereto. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver.

    12.5    **Subrogation.** In the event of full payment under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of the Indemnitee, who shall execute all documents required and shall do all acts that may be necessary or desirable to secure such rights and to enable the Company effectively to bring suit to enforce such rights.

    12.6    **Counterparts.** This Agreement may be executed in one or more counterparts, which shall together constitute one agreement.

12.7 **Successors and Assigns.** The terms of this Agreement shall bind, and shall inure to the benefit of, the successors and assigns of the parties hereto.

12.8 **Notice.** All notices, requests, and demands, in order to be effective under this Agreement, must be in writing and shall be deemed duly given: (a) upon confirmed hand delivery to the party addressee; or (b) if mailed by certified or registered mail, return receipt requested, postage prepaid, then upon confirmation of delivery to the party addressee.

12.9 **Governing Law.** This Agreement shall be governed exclusively by and construed according to the laws of the State of Delaware, as applied to contracts between Delaware residents entered into and to be performed entirely within Delaware.

12.10 **Consent to Jurisdiction.** The Company and the Indemnitee each hereby irrevocably consent to the jurisdiction of the courts of the State of Texas for all purposes in connection with any action or proceeding, which arises out of or relates to this Agreement.

12.11 **Legal Fees and Expenses.** It is the intent of the Company that the Indemnitee not be required to incur legal fees and or other expenses associated with the interpretation, enforcement or defense of the Indemnitee's rights under this Agreement by litigation or because the cost and thereof substantially detract from intended to be extended to the Indemnitee hereunder. Accordingly, without limiting the generality or effect of any other provision hereof, if it should appear to the Indemnitee that the Company has failed to comply with any of its obligations under this Agreement or in the event that the Company or any other person takes or threatens to take any action to declare this Agreement void or unenforceable or institutes any litigation or other action designed to deny, or to recover from, the Indemnitee the benefits provided or intended to be provided to the Indemnitee hereunder, the Company irrevocably authorizes the Indemnitee from time to time to retain counsel of Indemnitee's choice, at the expense of the Company as hereafter provided, to advise and represent the Indemnitee in connection with any such interpretation, enforcement or defense, including without limitation the initiation or defense of any litigation or other legal action, whether by or against the Company or any director, officer, stockholder or other person affiliated with the Company, in any jurisdiction. Notwithstanding any existing or prior attorney-client relationship between the Company and such counsel, the Company irrevocably consents to the Indemnitee's entering into an attorney-client relationship with such counsel, and in that connection the Company and the Indemnitee agree that a confidential relationship shall exist between the Indemnitee and such counsel. Without respect to whether the Indemnitee prevails, in whole or in part, in connection with any of the foregoing, the Company will pay and be solely financially responsible for any and all attorneys' and related fees and expenses incurred by the Indemnitee in connection with any of the foregoing.

IN WITNESS WHEREOF, the parties hereto have entered into this Indemnity Agreement effective as of the date first written above.

TABULATE, INC.

By: _[signature]_
Name: James Moskosly
Title: President

INDEMNITEE

_[signature]_
Albert J. Blanchard