# EXHIBIT B

# Tabulate, Inc.

August 15, 2014

Albert J. Blanchard
Chief Executive Officer
Tabulate, Inc.

Re: Employment Agreement

Dear Albert:

On behalf of Tabulate, Inc., a Delaware corporation (the "Company"), the following sets forth the terms and conditions of your employment with the Company:

1. **Employment.** The Company hereby agrees that, effective October 1, 2014, that it shall employ you, and you hereby agree to be employed by the Company, upon the terms and conditions set forth in this letter agreement ("Agreement"). You have been duly appointed and have served as the Company's Chief Executive Officer since April 26, 2014 and you will continue in such position until the termination of your employment. As Chief Executive Officer, you will have the duties and responsibilities that are customary to such office in a Delaware corporation, including general supervision, direction, and control of the business of the Company, subject to the governance of the Board of Directors (the "Board"). You shall report directly and solely to the Board. You were duly elected and appointed to the Board on April 25, 2014 and have continuously served as a director since that time. You currently serve as Chairman of the Board. During the term of your employment, your primary business time and attention shall be devoted to the business and affairs of the Company.

2. **Salary.** Your initial annual base salary is $240,000; provided that during the first six months of your employment you and the Company agree that your monthly salary shall be temporarily reduced to an amount equal to $15,000 per month. Your annual base salary will be payable in equal installments in accordance with the Company's normal payroll practices with such payroll deductions and withholdings as are required by law or authorized by you. Your base salary will be reviewed from time to time by the Board and will be increased by at least 10% on an annual basis; provided, that, the Board may on a monthly basis temporarily reduce or delay payment of some or all of your base salary if and to the extent that it reasonably determines that such temporary reduction or delay is necessary and in the best interests of the Company based upon the Company's operating cash reserves or position at such time. The Board shall not reduce your annual base salary other than on a temporary basis as provided under this Agreement.

3. **Bonuses.** You will be eligible to receive annual performance bonuses of cash and annual incentives consisting of stock, stock options, and/or other incentives as the Board shall deem appropriate. Such bonuses and incentives shall be commensurate with your position.

4. **Other Benefits and Reimbursement for Expenses.** You will be entitled to receive health insurance and other benefits (e.g., retirement savings plans, tax, financial, and estate planning services) offered to the Company's executive officers. The Company will pay 100% of the premiums for you and your family under the Company's executive plan for health, vision, dental, disability, and life insurance coverages. You will be eligible for up to four (4) weeks of vacation annually. Any unused vacation will be rolled forward for a period not to exceed three years. The Company will reimburse you for all reasonable expenses incurred by you in the course of performing your duties and which are consistent with the Company's operating budget and policies in effect from time to time with respect to travel, lodging, entertainment, business equipment, and other business expenses and accessories (e.g., without limitation, computers, phones, iPad, printers/copiers/scanners/faxes, wireless/remote Internet access, seminars, subscriptions, events, conferences, professional fees, auto expenses, association memberships and dues), subject to the Company's reasonable requirements with respect to reporting and documentation of such expenses.

5. **Restricted Stock.** In accordance with the authority and approval of the Board, you have acquired 6,000 shares of the Company's common stock, $0.001 par value per share (the "Shares"), pursuant to the terms and conditions of a Restricted Stock Agreement ("Restricted Stock Agreement") dated as of May 7, 2014 between by you and the Company. A portion of such Shares (the "Restricted Stock") are subject to the vesting schedule set forth in the Restricted Stock

Agreement and are subject to forfeiture under certain circumstances prior to vesting as set forth therein. The Company and you acknowledge and agree that a Service Relationship (as such term is defined in the Restricted Stock Agreement) has been established between you and the Company and has been continuous since April 25, 2014.

6. **Employment and Termination.** Your employment with the Company is at-will and may be terminated by you or by the Company at any time as follows:

   (a) You may terminate your employment upon 60 days written notice to the Board (an "Involuntary Termination") for "Good Reason" (as defined below); provided, that, if the circumstance constituting Good Reason is cured by the Company within 30 days following said written notice, then said written notice will be deemed withdrawn and of no effect;

   (b) You may terminate your employment upon 60 days written notice to the Board at any time in your sole discretion without Good Reason ("Voluntary Termination");

   (c) The Company may terminate your employment upon written notice to you at any time following a reasonable determination by the Board that there is "Cause" (as defined below) for such termination ("Termination for Cause");

   (d) The Company may terminate your employment upon 60 days written notice to you at any time in the sole discretion of the Board without a determination that there is Cause for such termination ("Termination without Cause"); and

   (e) Your employment will automatically terminate upon your death or upon 90 days following a determination of your disability by the Board ("Termination for Death or Disability"); provided, that "disability" shall mean the Board's reasonable determination that a physical or mental injury or incapacitation which you have suffered will significantly impair your inability to perform your essential job responsibilities for a period of 180 consecutive days or 180 days in the aggregate in any 12-month period.

7. **Definitions.** As used in this Agreement, the following terms have the following meanings:

   (a) "Good Reason" means the occurrence of any of the following conditions, without your written consent: (i) your no longer serving in the above-stated position with the Company and reporting only to the Board; or (ii) your no longer serving as a director on the Board (other than as a result of your voluntary resignation); or (iii) any material breach of this letter agreement by the Company, which is not cured within 30 days following your written notice to the Company setting forth in specific detail the nature of such alleged breach and all of the facts and circumstances supporting your belief that a material breach has occurred.

   (b) "Cause" means:

      (i) your conviction for or admission of guilt with respect to a felony involving moral turpitude, an act of fraud against the Company, or the theft of material property belonging to the Company;

      (ii) your willful and repeated failure to substantially perform your duties with the Company (other than due to your incapacity as a result of disability (as defined herein)); provided that you shall have failed to cure or remedy such breach, if susceptible to cure or remedy, to the reasonable satisfaction of the Company within 30 days following written notice thereof;

      (iii) your repeated engagement in conduct which is materially injurious to the Company, its business or reputation, or which constitutes gross misconduct; provided that you shall have failed to cure or remedy such breach, if susceptible to cure or remedy, to the reasonable satisfaction of the Company within 30 days following written notice thereof;

      (iv) the material breach by you of a written agreement with the Company; provided, that, you shall have failed to cure or remedy such breach, if susceptible to cure or remedy, to the reasonable satisfaction of the Board within 30 days following written notice thereof, and such breach adversely affects the Company in any material way; or

    (v)    you willfully obtain a personal profit from any material transaction or business dealing in which you have an interest adverse to the Company in any material way, unless such adverse interest and profit is disclosed to and approved in writing by the Board.

(c) "Change of Control" means a: (i) merger or reorganization of the Company with or into another corporation, entity or person where the stockholders of the Company immediately prior to the consummation of the merger or reorganization will not beneficially own, immediately after the merger or reorganization, shares of stock entitling such stockholders to more than 50% of all votes to which all stockholders of the surviving corporation would be entitled in the election of directors, or (ii) sale of all or substantially all of the assets of the Company, or (iii) sale or transfer of shares of the Company's stock representing the right to more than 50% of the votes entitled to vote in the election of directors, or (iv) the effectiveness of an initial public offering of the Company pursuant to a registration statement filed with the U.S. Securities and Exchange Commission, or the merger with an entity whose capital stock is publicly-traded or listed on a reputable, recognized stock exchange (provided such entity is the surviving entity), or any merger or other business combination or series of related transactions pursuant to which a majority of the Company's capital stock is owned by an entity whose capital stock is publicly-traded or listed on a reputable, recognized stock exchange.

8. **Separation Benefits.** Upon termination of your employment with the Company for any reason, you will receive payment for all unpaid salary and vacation accrued to the date of your termination of employment; any remaining unpaid balance of all bonuses granted; any performance bonus or portion thereof that has been earned but not paid; and your benefits will be continued under the Company's then existing benefit plans and policies for so long as provided under the terms of such plans and policies or as required by applicable law. In addition, the following provisions will apply depending on the basis of your termination of employment:

(a) In the event of your Voluntary Termination or Termination for Cause, you will not be entitled to any cash severance benefits (for avoidance of doubt, you will be entitled to the amounts as set forth the first sentence of this Section 8).

(b) In the event of your Involuntary Termination, Termination without Cause, or Termination for Death or Disability at any time (other than pursuant to Section 8(c) below), you will be entitled to a severance amount and payment equal to the sum of (i) 12 months of your then current annual base salary, plus (ii) 100% of the target bonus that would otherwise be payable to you for the fiscal year in which your termination occurs (whether or not you have satisfied the applicable performance objectives), plus (ii) 12 months of your then current premiums and administration fees for you and your family on the Company's health, dental, vision, life, and disability insurance coverage (collectively, the "TWOC Cash Severance").  The TWOC Cash Severance will be payable in lump sum upon the effective date of your last day of employment under this Agreement.

(c) In the event of your Involuntary Termination, Termination without Cause, or Termination for Death or Disability within 6 months prior to the Company's entering into a definite agreement or government filing that results in a Change of Control or within 12 months following a Change of Control, you will be entitled to a severance amount and payment equal to the sum of (i) 24 months of your then current annual base salary, plus (ii) 200% of the target bonus that would otherwise be payable to you for the fiscal year in which your termination occurs (whether or not you have satisfied the applicable performance objectives), plus (ii) 24 months of your then current premiums and administration fees for you and your family on the Company's health, dental, vision, life, and disability insurance coverage (collectively, the "COC Cash Severance").  The COC Cash Severance will be payable in lump sum upon the effective date of your last day of employment under this Agreement; provided, that, if prior to a Change of Control you were paid the TWOC Cash Severance and it is subsequently determined that you are entitled to a COC Cash Severance, then the difference between the COC Cash Severance and the amount of the TWOC Cash Severance actually paid to you will be payable in lump sum upon the effective date of the Change of Control.

(d) Except as otherwise provided in the Restrictive Stock Agreement, upon your Involuntary Termination or Termination without Cause, all non-vested stock options and other non-vested securities, if any, shall be accelerated in full and become fully vested and shall not be subject to any time period limitation on or expiration of the rights to exercise same that are triggered by the cessation of your employment (to the extent such expiration of rights to exercise is

  less than 5 years following cessation of your employment), notwithstanding anything to the contrary contained in any agreement or plan pursuant to which such stock options or securities were granted, or otherwise.

(e) In the event that TWOC Cash Severance, COC Cash Severance or other severance or deferred compensation or benefits paid or payable you shall become subject to any excise tax, penalty or similar charge by the U.S. Internal Revenue Service ("IRS"), the Company shall gross up the amount payable to you such that the net amount to be received by you after payment of such IRS excise tax, penalty or charge shall equal the gross amount payable to you hereunder (i.e., you shall be whole on a net basis as if such IRS excise tax or penalty had not been imposed).

(f) For purposes of determining and calculating the TWOC Cash Severance and the COC Cash Severance, the determination of your then current annual base salary shall not take into account any temporary reductions or payment delays, and in no event shall your annual base salary or fiscal year bonus be deemed less than the prior fiscal year.

(g) No payments due or payable to you under this Agreement will be subject to mitigation or offset.

9. **Confidentiality and Non-Competition Agreements.** As a condition to your employment under this Agreement, you have or shall concurrently herewith execute a Confidentiality Agreement in favor of the Company (the "Confidentiality Agreement") and enter into a Non-Competition Agreement ("Non-Competition Agreement") with the Company, each in form mutually agreed between you and the Company, respectively. In the event of your Involuntary Termination or Termination without Cause, the non-competition provisions under the Non-Competition Agreement shall be thereupon terminated and of no further force or effect.

10. **Arbitration.** You agree that any dispute regarding the interpretation or enforcement of this Agreement may at the election of the Company (which election must be made within thirty (30) days following written notice of such dispute) be decided by confidential, final and binding arbitration conducted by Judicial Arbitration and Mediation Services ("JAMS") in the exclusive forum of Houston, Texas under the then existing JAMS rules rather than by litigation in court, trial by jury, administrative proceeding or in any other forum. The filing fees and arbitrator's fees and costs in such arbitration will be borne by the Company. The parties will be entitled to reasonable discovery of essential matters as determined by the arbitrator. In the arbitration, the parties will be entitled to all remedies that would have been available if the matter were litigated in a court of law.

11. **Miscellaneous.**

(a) Absence of Conflicts. You represent that your performance of your duties under this Agreement will not breach any other agreement as to which you are a party.

(b) Attorneys Fees. If a legal action or other proceeding is brought for enforcement of this Agreement, the prevailing party will be entitled to recover reasonable attorneys' fees and costs incurred, both before and after judgment, in addition to any other relief to which they may be entitled.

(c) Successors. This Agreement is binding on and may be enforced by the Company and its successors and assigns and is binding on and may be enforced by you and your heirs and legal representatives. Any successor to the Company or substantially all of its business (whether by purchase, merger, consolidation or otherwise) will in advance assume in writing and be bound by all of the Company's obligations under this Agreement.

(d) Notices. Notices under this Agreement must be in writing and will be deemed to have been given when personally delivered by hand or upon confirmation of delivery if by (i) U.S. registered or certified mail, return receipt requested and postage prepaid, (ii) Federal Express confirmed delivery, (iii) UPS confirmed delivery, or (iv) by email if recipient confirms receipt by reply email or otherwise. Mailed notices to you shall be addressed to you at the home address that you have most recently communicated to the Company in writing. Mailed notices to the Company shall be addressed to the Company, attention: President, with a copy to the Legal Department, at the Company's corporate headquarters.

(e) Waiver. No provision of this Agreement will be modified or waived except in writing signed by you and an officer of the Company duly authorized by the Board for such particular purpose. No waiver by either party of any breach of this agreement by the other party will be considered a waiver of any other breach of this Agreement.

(f) Entire Agreement. This Agreement, together with the Confidentiality Agreement, Non-Competition Agreement and Restricted Stock Agreement, represent the entire agreement between the Company and you concerning the subject matter of your employment with the Company.

(g) Governing Law; Venue. This Agreement will be governed by the laws of the State of Texas without reference to conflict of laws provisions. The parties hereto consent to venue and personal jurisdiction in the state and federal courts located in Harris County, Texas with respect to any dispute arising out of or relating to this Agreement.

This Agreement constitutes a legal and binding agreement between you and the Company, enforceable in accordance with its terms. Please indicate your acceptance of the terms of this Agreement by signing in the place indicated below.

Very truly yours,

*[signature]*

James P. Moskosky, President
Tabulate, Inc.

Agreed and Accepted by:

*[signature]*

Albert J. Blanchard